1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRECT CONNECT LOGISTIX, INC., | Case No.  1:16-cv-01006-AWI-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BE GRANTED IN PART** |
| v. | |
| ROAD KINGS TRUCKING INC., STAR LOGISTICS INC., | (Doc. No. 13) |
| Defendants. | |
| _____/ | **OBJECTIONS DUE: 21 DAYS** |

## I.    INTRODUCTION

Pending is the Notice of Motion and Motion of Plaintiff Direct Connect Logistix, Inc. for Default Judgment Against Both Defendants and Supporting Declaration (the "Motion for Default Judgment").  (Doc. 13.)  Neither Defendant has filed an opposition to the Motion for Default Judgment to date.  The Court has reviewed the Motion for Default Judgment and the supporting documentation and determined pursuant to Local Rule 230(g) that this matter is suitable for decision without oral argument.

For the reasons set forth herein, the undersigned RECOMMENDS that the district court GRANT IN PART Plaintiff's Motion for Default Judgment against both Defendants.

## II.    BACKGROUND

This is an action by Plaintiff to recover the value of a shipment of cheddar cheese that was allegedly lost or converted while in Defendants' possession in April or May 2016 (the "Shipment").   Plaintiff is a corporation organized under the laws of the state of Indiana that "engage[s] in business on a nationwide basis as a property broker, arranging for transportation services through interstate motor carriers."  (Doc. 1 ¶ 1.)  Defendants Road Kings Trucking Inc. ("Road Kings") and Star Logistics Inc. ("Star Logistics") are both corporations organized under the laws of the state of California that "conduct[] business as . . . licensed motor carrier[s] of property in interstate and foreign commerce."  (*Id.* ¶ 2.)

### A.    Factual Background

On November 25, 2015, Plaintiff and Defendant Star Logistics entered into a "Contract Carrier Agreement" pertaining to Plaintiff's use of "the services of [Defendant Star Logistics] to transport for or on behalf of [Plaintiff's] customers."  (Doc. 15, Ex. A at 2.)  On February 8, 2016, Plaintiff and Defendant Road Kings entered into a similar "Contract Carrier Agreement."  (*Id.*, Ex. B at 10–16; *see also* Doc. 15 at 3 (providing the declaration of Tyler Keller, an Operations Officer for Plaintiff, in which he states that both Defendants "executed [Plaintiff's] standard Contract Carrier Agreement").)   Both of these agreements include identical "[i]ndemnity" provisions, which provide the following, in relevant part:

> [Defendants] shall defend, indemnify, and hold [Plaintiff], its customer, and each of their affiliated entities harmless from and against all loss, liability, damage, claim, fine, cost or expense, including reasonable attorney's fees, arising out of or in any way related to the performance or breach of this [Contract Carrier Agreement] by [Defendants], [their] employees or independent contractors working for [Defendants] . . . .

(*Id.*, Ex. A at 6; *id.*, Ex. B at 14.)  Plaintiff's Contract Carrier Agreements with Defendants "remain[ed] in effect for one . . . year" from the date of the execution of each agreement.  (*Id.*, Ex. A at 2; *id.*, Ex. B at 10.)

According to the Complaint, "[o]n or about April 28, 2016, [D]efendant[] Star Logistics . . . . accepted a written request from [P]laintiff in the form of [P]laintiff's [l]oad [c]onfirmation to

1  transport . . . one shipment of cheddar cheese from Hilmar, California to Mercer, Pennsylvania."

2  (Doc. 1 ¶ 9.)  The Complaint alleges that Defendant Star Logistics "subcontracted and/or brokered

3  the transportation of" the Shipment "to [D]efendant Road Kings" without "the knowledge or

4  consent of [P]laintiff."  (*Id.* ¶ 10.)  The Complaint then avers that, "[o]n or about April 29, 2016,

5  [D]efendants . . . received" the Shipment in "good condition" for "transportation from California

6  to Pennsylvania."  (*Id.* ¶¶ 11–12.)  The Complaint further alleges that Defendants "failed to satisfy

7  [their] obligations with respect to" the Shipment, as the Shipment "was lost or converted while in

8  [D]efendants' possession in California."  (*Id.* ¶ 13.)

9       The Complaint avers that, "[a]s a result of [the] loss" of the Shipment, Plaintiff "received a

10  claim from its customer, Hilmar Cheese Company in the sum of $59,442.59."  (*Id.* ¶ 15; *see also*

11  Doc. 15, Ex. C at 18 (constituting an invoice from Hilmar Cheese Company dated April 29, 2016

12  pertaining to quantities of "cheddar plain box" with a "ship to" recipient in Mercer, Pennsylvania

13  and an "[i]nvoice [t]otal" of $59,442.59).)  On September 1, 2016, Plaintiff issued a check to

14  Hilmar Cheese Company in the amount of $59,442.59 "in satisfaction of the claim."  (Doc. 15 at

15  4; *see also id.*, Ex. D at 23 (constituting a check from Plaintiff to Hilmar Cheese Co. dated

16  September 1, 2016 in the amount of $59,442.59).)

17  **B.**   **Procedural Posture**

18       On July 13, 2016, Plaintiff filed the Complaint against Defendants in this Court.  (*See* Doc.

19  1.)   The Complaint includes the following claims: (1) Count I—loss of cargo against both

20  Defendants pursuant to 49 U.S.C. § 14706, (*see id.* ¶¶ 8–16); (2) Count II—negligence against

21  both Defendants, (*see id.* ¶¶ 17–20); (3) Count III—breach of contract against Defendant Star

22  Logistics arising out of the alleged breach of the November 25, 2015 Contract Carrier Agreement,

23  (*see id.* ¶¶ 21–27); (4) Count IV—breach of contract against Defendant Star Logistics arising out

24  of the alleged breach of a "[l]oad [c]onfirmation accepted . . . on or about April 28, 2016," (*see id.*

25  ¶¶ 28–32); and (5) Count V—breach of contract against Defendant Road Kings arising out of the

26  alleged breach of the February 8, 2016 Contract Carrier Agreement, (*see id.* ¶¶ 33–38).   The

27  Complaint includes the following prayers for relief: (1) "the sum of $59,442.59 plus interest

28

thereon at the maximum lawful rate from June 7, 2016;" and (2) attorneys' fees and costs. (*Id.* at 10.)

On July 23, 2016, Plaintiff effectuated service of the Complaint on both Defendants. (*See* Docs. 6 & 7.)  After Defendants failed to respond to the Complaint, Plaintiff filed a Request to Enter Default of Both Defendants on August 16, 2016.  (Doc. 8.)  The Clerk then entered Certificates of Entry of Default against both Defendants on August 18, 2016.  (Docs. 9 & 10.)

On September 7, 2016, Plaintiff filed the Motion for Default Judgment.  (Doc. 13.)  To date, neither Defendant has responded to this motion.  The Motion for Default Judgment is thus ready for disposition.

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 55(b)

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a).  *See* Fed. R. Civ. P. 55(b)(2). "[D]efault does not entitle the non-defaulting party to a default judgment as a matter of right . . . ." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 785 (9th Cir. 2011).  Rather, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (citations omitted).

In *Eitel v. McCool*, the Ninth Circuit identified seven "[f]actors which may be considered by courts in exercising discretion as to the entry of a default judgment," including (1) "the possibility of prejudice to the plaintiff;" (2) "the merits of plaintiff's substantive claim;" (3) "the sufficiency of the complaint;" (4) "the sum of money at stake in the action;" (5) "the possibility of a dispute concerning material facts;" (6) "whether the default was due to excusable neglect;" and (7) "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." 782 F.2d 1470, 1471–72 (9th Cir. 1986).  The "general rule" is "that default judgments are ordinarily disfavored.  *Id.* at 1472.   Nonetheless, in applying the *Eitel* "discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v.*

*Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo v. Triunfo–Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("In reviewing a default judgment, [the] court must take the well-pleaded factual allegations of [the complaint] as true." (citing *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986))). "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation omitted). Further, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Id.* (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

**B.    Federal Rule of Civil Procedure 54(b)**

Federal Rule of Civil Procedure 54(b) provides, in part, that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."   However, "under certain circumstances, the court should not enter a default judgment against one or more defendants which is, or likely to be, inconsistent with judgment on the merits in favor of the remaining answering defendants." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (citing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552 (1872)).

## IV.    ANALYSIS OF THE *EITEL* FACTORS

The undersigned will address each of the *Eitel* factors, in turn.  For the reasons provided below, the undersigned finds that these factors weigh in favor of the entry of default judgment against both Defendants.

**A.     The Possibility of Prejudice to Plaintiff**

"The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment."  *Joe Hand Promotions, Inc. v. Dhillon*, No. 2:15-cv-1108-MCE-KJN, 2015 WL 7572076, at *2 (E.D. Cal. Nov. 25, 2015).  In the present matter, Defendants failed to answer the Complaint, thereby stalling this litigation and potentially prejudicing Plaintiff by leaving it with no recourse to recover the loss Plaintiff alleges was caused by Defendants' actions.  The undersigned therefore finds that the first *Eitel* factor weighs in favor of the entry of default judgment.  *See, e.g.*, *Otter Prods. LLC v. Ace Colors Fashion, Inc.*, No. 2:14–cv–00141–ODW(PJWx), 2014 WL 4187947, at *3 (C.D. Cal. Aug. 21, 2014) (stating that "[a] plaintiff suffers prejudice" under the first *Eitel* factor "if there is no recourse for recovery absent default" (citing *Philip Morris USA, Inc.*, 219 F.R.D. at 499)).

**B.     The Merits of Plaintiff's Claims and the Sufficiency of the Complaint**

"The second and third *Eitel* factors address the merits and sufficiency of [the plaintiff's] claims pled in the complaint."  *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *2 (N.D. Cal. Apr. 6, 2012).  *See generally U.S. ex rel. Hajoca Corp. v. Aeroplate Corp.*, No. 1:12–cv–1287–AWI–BAM, 2013 WL 3729692, at *3 (E.D. Cal. July 12, 2013) (addressing the second and third *Eitel* factors "together because of the relatedness of the two inquiries").  "Together, 'these two factors require that a plaintiff state a claim on which the plaintiff may recover.'"  *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, CASE NO.: CV 13-09221-SJO (FFMx), 2015 WL 9690322, at *3 (C.D. Cal. Sept. 29, 2015) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)); *see, e.g.*, *Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001) ("The Ninth Circuit has suggested that the . . . two *Eitel* factor[s] . . . involving the substantive merits of [the plaintiff's] claims and the sufficiency of the complaint . . . 'require that [the] plaintiff's allegations state a claim on which they may recover.'" (quoting *Kloepping v. Fireman's Fund*, No. C-94-2684, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996))).  As discussed below, the undersigned finds that

Plaintiff satisfies the second and third *Eitel* factors as to Count I of the Complaint, but not as to the remaining claims.

      1.    <u>Count I—Liability for Loss of Cargo under 49 U.S.C. § 14706</u>

In Count I, Plaintiff alleges that Defendants are liable for the loss or conversion of the Shipment pursuant to 49 U.S.C. § 14706—otherwise known as the "Carmack Amendment." (Doc. 1 ¶¶ 8–16.)  Section 14706 provides the following, in pertinent part:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part.  That carrier and any other carrier that delivers the property . . . are liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, [or] (B) the delivering carrier . . . .

49 U.S.C. § 14706(a)(1).  The Carmack Amendment "governs the terms of interstate shipment by domestic rail and motor carriers."  *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1121 (9th Cir. 2011) (citation omitted).  The Carmack Amendment "was enacted in 1906 as an amendment to the Interstate Commerce Act," *id.*, and "subjects common carriers and freight forwarders transporting cargo in interstate commerce to absolute liability for actual loss or injury to property," *Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.*, 201 F.3d 1111, 1115 (9th Cir. 2000) (citing 49 U.S.C. § 14706(a)).  "The statute serves as a shipper's exclusive remedy for damaged property and preempts common law causes of action against such 'carriers' and 'freight forwarders.'" *Rohr, Inc. v. UPS-Supply Chain Sols., Inc.*, 939 F. Supp. 2d 1041, 1049 (S.D. Cal. 2013) (citing *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992)).

"A plaintiff must allege three elements to establish a prima facie case of violation of the Carmack Amendment: (1) delivery of the goods to the initial carrier in good condition, (2) damage to the goods before delivery to their final destination, or failure to deliver[] altogether, and (3) the amount of damages."  *Wright v. Neptune Soc'y of Cent. Cal., Inc.*, No. CV F 07-0117 LJO TAG, 2007 WL 963302, at *2 (E.D. Cal. Mar. 29, 2007) (citing *Beta Spawn, Inc. v. FFE Transp. Servs., Inc.*, 250 F.3d 218, 223 (3d Cir. 2001)); *cf. Advantage Freight Network v. Sanchez*, No. CV-F-07-827-LJO-SMS, 2008 WL 4183987, at *3 (E.D. Cal. Sept. 10, 2008) ("To recover for lost goods pursuant to the Carmack Amendment, [a plaintiff] must establish the following as a prima facie

case: (1) good condition of the shipment at the point of origin; (2) a loss or damaged condition at destination; and (3) the amount of its damages."  (citing *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137–38 (1964))).

Plaintiff provides adequate factual allegations in the Complaint—which are accepted as true in the instant default-judgment analysis, *see, e.g.*, *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)—to satisfy each of these elements.  Specifically, Plaintiff alleges in the Complaint (1) that it delivered the Shipment to Defendants in good condition on April 29, 2016, (Doc. 1 ¶¶ 11–12); (2) that the Shipment "was lost or converted while in [D]efendants' possession in California," (*id.* ¶ 13); and (3) the specific amount of damages associated with the alleged loss or conversion—namely, $59,442.59, (*id.* ¶ 15).  The undersigned finds that these allegations state a claim under the Carmack Amendment for which Plaintiff may recover.  *See, e.g.*, *Wright*, 2007 WL 963302, at *2 (providing the elements for a cause of action under the Carmack Amendment (citing *Beta Spawn, Inc.*, 250 F.3d at 223)); *Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*, 185 F. Supp. 2d 1103, 1111 (C.D. Cal. 2001) ("A shipper establishes a prima facie case of liability under the Carmack Amendment when it shows that goods, which were dropped off in good condition, arrived in damaged condition (or not at all), and the amount of damages." (citing *Mo. Pac. R.R. Co.*, 377 U.S. at 138)).

2.   Plaintiff's Remaining Claims

The Complaint includes the following additional claims: (1) Count II, which is a negligence claim against both Defendants, (*see* Doc. 1 ¶¶ 17–20); and (2) Counts III through V, which are breach-of-contract claims against Defendants, (*see id.* ¶¶ 21–38).  In each of these claims—as in the Carmack Amendment claim provided in Count I—Plaintiff alleges that it suffered harm as a result of the loss or conversion of the Shipment and seeks to recoup its losses associated with the Shipment.  (*See id.* ¶¶ 17–38.)  However, these claims are not valid bases for relief, as the Carmack Amendment preempts Plaintiff's negligence claim in Count II, *see, e.g.*, *Waller v. Gary & Koby Transp., Inc. DBA Best Quality Movers*, No. 1:08-cv-00725 AWI GSA, 2008 WL 4224722, at *6 (E.D. Cal. Sept. 15, 2008) ("[T]he Carmack Amendment preempts state law claims for negligence." (citing *Hughes Aircraft Co.*, 970 F.2d at 613)), and the breach-of-

1   contract claims in Counts III through V, *see, e.g.*, *Smallwood*, 660 F.3d at 1120 ("It is well settled

2   that the Carmack Amendment is the exclusive cause of action for interstate-shipping contract

3   claims alleging loss or damage to property and thus completely preempt [breach-of-contract]

4   claims." (citation omitted)); *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688 (9th Cir. 2007)

5   ("[T]he Carmack Amendment completely preempts a contract claim alleging loss or damage to

6   property.").  *See generally Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d

7   1056, 1061 (9th Cir. 2011) ("[T]he Carmack Amendment preempts all state and common law

8   claims for relief against a carrier for damage to goods in interstate carriage, regardless of whether

9   those claims contradict or supplement Carmack relief." (citations omitted)).   Simply put, the

10  Carmack Amendment "constitutes the exclusive remedy against an interstate carrier of goods for

11  loss or damage to transported cargo."  *NYK Line v. Burlington N. & Sante Fe Ry. Co.*, 222 F.

12  Supp. 2d 1176, 1179 (C.D. Cal. 2002) (citations omitted); *see, e.g.*, *Rohr, Inc.*, 939 F. Supp. 2d at

13  1049 (stating that the Carmack Amendment "serves as [a plaintiff's] exclusive remedy for

14  damaged [or lost] property and preempts common law causes of action against such 'carriers' and

15  'freight forwarders'" (citing *Hughes Aircraft Co.*, 970 F.2d at 613)).  Thus, Plaintiff's state-law

16  claims for negligence and breach of contract do not provide bases for recovery and, as such, do not

17  satisfy the second and third *Eitel* factors.  *See, e.g.*, *Rolex Watch U.S.A., Inc. v. Watch Empire*

18  *LLC*, CASE NO.: CV 13-09221-SJO (FFMx), 2015 WL 9690322, at *3 (C.D. Cal. Sept. 29, 2015)

19  (stating that the second and third *Eitel* "factors require that a plaintiff state a claim on which the

20  plaintiff may recover" (quoting *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1175

21  (C.D. Cal. 2002))).

22  **C.      The Sum of Money at Stake**

23          Turning to the fourth *Eitel* factor, "the court must [next] consider the amount of money at

24  stake in relation to the seriousness of [the defendant's] conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d

25  at 1176-77.  "This requires the court [to] assess whether the recovery sought is proportional to the

26  harm caused by [the] defendant's conduct."  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F.

27  Supp. 2d 916, 921 (C.D. Cal. 2010) (citing *Walters v. Statewide Concrete Barrier, Inc.*, No. C 04–

28  2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006)).  "Default judgment is disfavored

where the sum of money at stake is too large or unreasonable in relation to [the] defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (citing *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)); *see also BR North 223, LLC v. Glieberman*, No. 1:10–cv–02153 LJO–BAM, 2012 WL 639500, at *5 (E.D. Cal. Feb. 27, 2012) ("In general, the fact that a large sum of money is at stake is a factor disfavoring default judgment." (citations omitted)).   "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citation omitted).

In support of the Motion for Default Judgment, Plaintiff filed the declaration of Tyler Keller, an Operations Officer for Plaintiff.  (*See* Doc. 15 at 3–4.)  In his declaration, Mr. Keller states that the "production value of the shipment" is $59,442.59.  (*Id.* at 4; *see also id.*, Ex. C at 18 (constituting an invoice from Hilmar Cheese Company dated April 29, 2016, which describes four quantities of "cheddar plain box" and provides an "[i]nvoice [t]otal" of $59,442.59.)  Mr. Keller further states that Plaintiff's customer—Hilmar Cheese Company—held Plaintiff "responsible for" this value and Plaintiff "issue[d]" a check to Hilmar Cheese Company in the amount of $59,442.59 to satisfy this "claim."  (Doc. 15 at 4; *see also id.*, Ex. D at 23 (constituting a check from Plaintiff to Hilmar Cheese Co. dated September 1, 2016 in the amount of $59,442.59).)  Plaintiff also seeks prejudgment interest on the $59,442.59 value of the Shipment.  (*See, e.g.*, Doc. 1 at 10.)

The undersigned finds that Plaintiff has provided adequate evidence in the form of declarations and documentation to support its assertion that Plaintiff suffered harm in the amount of $59,442.59 due to Defendants' conduct.  Furthermore, the record does not include any evidence or assertions indicating that $59,442.59 plus prejudgment interest is a disproportionate amount of money compared to the harm caused by Defendants' conduct.  The undersigned therefore finds that the sum of money at stake in this action—$59,442.59 plus prejudgment interest—is sufficiently proportionate to the harm caused by Defendants' conduct to satisfy the fourth *Eitel* factor.  *See, e.g.*, *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 921 (finding that the fourth *Eitel* factor

10

1   weighed in favor of granting default judgment where, in part, the plaintiff "proffer[ed]" a

2   declaration providing the amount "still due and owing").

3   **D.      The Possibility of a Dispute Concerning the Material Facts**

4          "The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the

5   material facts surrounding the case." *United States v. Sterling Centrecorp, Inc.*, No. 2:08–cv–

6   02556 MCE JFM, 2011 WL 2198346, at *6 (E.D. Cal. June 6, 2011) (quoting *Craigslist, Inc. v.*

7   *Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010)).   There is little possibility of

8   dispute in this case.   Plaintiff included well-plead allegations in the Complaint—which the Court

9   accepts as true in the instant analysis—that it provided the Shipment to Defendants in good

10  condition and the Shipment was subsequently lost or converted.   (*See* Doc. 1 ¶¶ 11–13.)

11  Additionally, Plaintiff filed evidence supporting its assertion that it paid $59,442.59 to its

12  customer as a result of the loss or conversion of the Shipment.   (*See* Doc. 15 at 4; *id.*, Ex. D.)

13  Finally, Defendants declined to participate—or even appear—in this case to contest Plaintiff's

14  allegations.   The undersigned therefore finds that, based on the record in this case, the fifth *Eitel*

15  factor weighs in favor of granting default judgment.   *See, e.g.*, *Vogel*, 992 F. Supp. 2d at 1013

16  ("Since [the plaintiff's] factual allegations are presumed true and [the defendant] has failed to

17  oppose the motion, no factual disputes exist that would preclude the entry of default judgment.");

18  *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 922 ("Since [the plaintiff] has supported its claims with

19  ample evidence, and [the] defendant has made no attempt to challenge the accuracy of the

20  allegations in the complaint, no factual disputes exist that preclude the entry of default

21  judgment.").

22  **E.      Whether Defendants' Default Was Due to Excusable Neglect**

23         "The [sixth] *Eitel* factor considers whether a defendant's default may have resulted from

24  excusable neglect."   *Vogel*, 992 F. Supp. 2d at 1013 (citation omitted).   *See generally United*

25  *States v. Sanders*, Case No. 1:16-cv-00031-DAD-SAB, 2016 WL 5109939, at *4 (E.D. Cal. Sept.

26  20, 2016) ("Due process requires that all interested parties be given notice reasonably calculated to

27  apprise them of the pendency of the action and be afforded opportunity to present their objections

28  before a final judgment is rendered." (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*,

219 F.R.D. 494, 500 (C.D. Cal. 2003))).  In the present action, the record reflects that Plaintiff effectuated service on Defendants on July 23, 2016.  (*See* Docs. 6 & 7.)  Nonetheless, Defendants failed to respond to the instant Motion for Default Judgment or otherwise participate in this litigation.  It is therefore "unlikely that Defendants' failure to answer, and the resulting defaults entered by the Clerk of Court, were the result of excusable neglect."  *State Farm Life Ins. Co. v. Canul*, No. 1:11–cv–01787, 2012 WL 1192778, at *3 (E.D. Cal. Apr. 10, 2012) (citing *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001)); *see, e.g.*, *Kuei*, 194 F. Supp. 2d at 1005 (finding that the defendants' default could not "be attributable to excusable neglect" where they "were properly served with the [c]omplaint, the notice of entry of default, [and] the papers in support of the . . . motion" for entry of default judgment); *see also Protective Life Ins. Co. v. Phillips*, No. CIV S-08-0035 JAM EFB, 2008 WL 4104284, at *3 (E.D. Cal. Aug. 26, 2008) (stating that a defendant's "failure to respond cannot be deemed 'excusable neglect'").  Accordingly, the undersigned finds that this factor weighs in favor of granting Plaintiff's request for the entry of default judgment.

## F.        Policy Favoring Decisions on the Merits

The seventh and final *Eitel* factor requires consideration of "the strong policy favoring decisions on the merits."  *Drew v. Lexington Consumer Advocacy, LLC*, Case No. 16-cv-00200-LB, 2016 WL 1559717, at *10 (N.D. Cal. Apr. 18, 2016) (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  Of course, the "general rule" is "that default judgments are ordinarily disfavored" and "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citation omitted); *see also Collin v. Zeff*, No. CV12–8156 PSG (AJW), 2013 WL 3273413, at *7 (C.D. Cal. June 24, 2013) ("The Ninth Circuit has emphasized that 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" (quoting *United States v. Signed Pers. Check No. 730 of Ybran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010))).  As default judgment would dispose of this case on grounds other than the merits of Plaintiff's claims, the undersigned finds that this factor weighs against the entry of default judgment.  *See, e.g.*, *United States v. Ordonez*, No. 1:10–cv–01921–LJO–SKO, 2011 WL

1807112, at *3 (E.D. Cal. May 11, 2011) (noting that the seventh *Eitel* factor "inherently weighs strongly against awarding default judgment in every case"). Nonetheless, as Defendants' failure to participate in this litigation makes "a decision on the merits impractical, if not impossible," the Court "is not precluded from entering default judgment against" Defendants. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

In summary, six of the *Eitel* factors weigh in favor of default judgment, while the strong policy in favor of deciding cases on their merits weighs against the entry of default judgment. "While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citations omitted). As only this policy consideration weighs against default judgment, the undersigned finds that, on balance, the *Eitel* factors favor the entry of default judgment against Defendants. *See, e.g.*, *Ordonez*, 2011 WL 1807112, at *3 (finding that, "[i]n the aggregate," the seventh *Eitel* factor "is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment"); *Warne*, 2012 WL 1156402, at *3 ("In the aggregate, the seventh *Eitel* factor is outweighed by the other six factors that weigh in favor of default judgment." (citation omitted)).

## VI.   AMOUNT OF JUDGMENT AND PREJUDGMENT INTEREST

The undersigned next turns to the damages and interest requested by Plaintiff. "A plaintiff seeking default judgment 'must . . . prove all damages sought in the complaint.'" *Warne*, 2012 WL 1156402, at *4 (quoting *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010)). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *United States v. Yermian*, Case No. SACV 15-0820-DOC (RAOx), 2016 WL 1399519, at *3 (C.D. Cal. Mar. 18, 2016) (quoting *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06–CV–03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)). Additionally, "a default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Philip*

*Morris USA, Inc.*, 219 F.R.D. at 499.  "[I]f the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default."  *Id.* at 498 (citing *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)).  "Entry of default judgment for money is appropriate without a hearing if 'the amount claimed is a liquidated sum or capable of mathematical calculation.'"  *Warne*, 2012 WL 1156402, at *4 (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)); *see also Yermian*, 2016 WL 1399519, at *3 ("Rule 55 does not require the court to conduct a hearing on damages, so long as it ensures there is an adequate basis for the damages awarded in the default judgment." (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991))).

Furthermore, "pursuant to Federal Rule of Civil Procedure 54(c), '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.'"  *Drew*, 2016 WL 1559717, at *11 (quoting Fed. R. Civ. P. 54(c)).  "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against him so that he may make a calculated decision as to whether or not it is in his best interest to answer."  *Id.* (citing *In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008) and *Bd. of Trs. of the Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co.*, No. 08-2038 SC, 2009 WL 1704677, at *3–5 (N.D. Cal. June 17, 2009)).

In the Complaint, Plaintiff requests a specified amount of damages for the loss or conversion of the Shipment—$59,442.59. (Doc. 1 at 10.)  As noted above, Plaintiff also filed the declaration of one of its employees and documentary evidence supporting its assertion that it suffered harm in the amount of $59,442.59 due to Defendants' conduct.  (*See, e.g.*, Doc. 15 at 3–4 (constituting the declaration of Tyler Keller, an Operations Officer for Plaintiff); *id.*, Ex. D at 23 (constituting a check from Plaintiff to Hilmar Cheese Co. dated September 1, 2016 in the amount of $59,442.59).)  The undersigned finds that Plaintiff has adequately identified the specific amount of damages requested and provided sufficient declarations and other documentation to meet its burden in establishing an amount of damages of $59,442.59.

Plaintiff also requests prejudgment interest on this amount of damages.  "The Carmack Amendment does not explicitly provide for the award of prejudgment interest."  *Waller v. Gary &*

1  *Koby Transp., Inc. DBA Best Quality Movers*, No. 1:08-cv-00725 AWI GSA, 2008 WL 4224722,

2  at *7 (E.D. Cal. Sept. 15, 2008).   Instead, "[a]n award of prejudgment interest in such cases is

3  committed to a court's broad discretion." *Id.* (citing *Ambromovage v. United Mine Workers*, 726

4  F.2d 972, 981–82 (3d Cir. 1984)).   Courts have determined that an award of prejudgment interest

5  is proper in Carmack Amendment cases to make the wronged party whole and "compensate

6  shippers whose goods are damaged [or lost] while in the possession of a carrier."   *Waller*, 2008

7  WL 4224722, at *7; *see also In re Acequia, Inc.*, 34 F.3d 800, 818 (9th Cir. 1994) ("Awards of

8  prejudgment interest are governed by considerations of fairness and are awarded when it is

9  necessary to make the wronged party whole."  (quoting *Purcell v. United States*, 1 F.3d 932, 942–

10 43 (9th Cir. 1993))).   "Accordingly, '[a]ward of [prejudgment] interest as part of the full actual

11 loss is proper under the Carmack Amendment.'"   *Waller*, 2008 WL 4224722, at *7 (emphasis

12 omitted) (quoting *Co-Operative Shippers, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 624 F.

13 Supp. 797, 800 (N.D. Ill. 1985)).

14        In the present matter, Plaintiff paid the value of the Shipment to its customer and thereby

15 suffered the opportunity cost associated with not having access to these funds.   The undersigned

16 therefore finds that prejudgment interest is part of the full actual loss suffered by Plaintiff and an

17 award of prejudgment interest is necessary to make Plaintiff whole.   Additionally, the record does

18 not indicate that an award of prejudgment interest would otherwise be improper.   Accordingly, the

19 undersigned recommends that the district court award prejudgment interest.[1]

20        In summary, the Court recommends that the district court award Plaintiff damages in the

21 amount of $59,442.59, as well as prejudgment interest.   The undersigned next turns to Plaintiff's

22 request for fees and costs.

23

24

25

26 ――――――――――――――――――
[1] As to the amount of prejudgment interest, Local Rule 590 provides that, "[u]nless the Court directs otherwise, an award of prejudgment interest shall be computed at the rate authorized in 28 U.S.C. § 1961, providing for interest on judgments."   Section 1961, in turn, provides that "interest shall be calculated from the date of the entry of the

27 judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. §

28 1961(a).   Thus, the appropriate rate for prejudgment interest should be determined by the Court based on the date of the entry of judgment.

## V. ATTORNEYS' FEES AND COSTS

In the Motion for Default Judgment, Plaintiff requests attorneys' fees "incurred to enforce the terms of the" Contract Carrier Agreements pursuant to the indemnity provisions of these agreements. (Doc. 13 at 4–5.) These indemnity provisions provide the following, in pertinent part:

> [Defendants] shall defend, indemnify, and hold [Plaintiff], its customer, and each of their affiliated entities harmless from and against all loss, liability, damage, claim, fine, cost or expense, including reasonable attorney's fees, arising out of or in any way related to the performance or breach of this Agreement by [Defendants], its employees or independent contractors working for [Defendants] . . . .

(Doc. 15, Ex. A ¶ 12; *id.*, Ex. B ¶ 12.) Plaintiff's attorneys' fees incurred in prosecuting this matter undoubtedly "relate[] to the performance or breach of" the parties' agreements. As such, the remaining question is whether these contractual attorneys' fees are permissible in this action.

The section of the Carmack Amendment at issue in this case—49 U.S.C. § 14706—"does not provide for attorney's fees." *Mosso v. Dependable Auto Shippers, Inc.*, No. 1:07-cv-00005-OWW-NEW, 2007 WL 2746723, at *5 (E.D. Cal. Sept. 19, 2007). *See generally FNS, Inc. v. Bowerman Trucking, Inc.*, No. 09–CV–0866–IEG (PCL), 2010 WL 532421, at *6 (S.D. Cal. Feb. 9, 2010) ("[T]he cases that have recognized the availability of attorney's fees under the Carmack Amendment relate only to § 14708, which authorizes the recovery of attorney's fees by a shipper of 'household goods.'" (citations omitted)). Additionally, as noted above, while the parties may have contracted for attorneys' fees, Plaintiff's breach-of-contract claims relating to those agreements are preempted by the Carmack Amendment. *See, e.g.*, *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688 (9th Cir. 2007) ("[T]he Carmack Amendment completely preempts a contract claim alleging loss or damage to property."). Despite this preemption, several district courts in this Circuit found that the prevailing party may nonetheless recover attorneys' fees in cases involving a Carmack Amendment claim where the parties provided for such fees through their contractual agreements. *See, e.g.*, *Mosso*, 2007 WL 2746723, at *6 (denying the defendant's motion to dismiss the plaintiff's request for attorneys' fees because case law "do[es] not prevent the parties from contractually providing for attorney's fees to the prevailing party in a Carmack Amendment

16

dispute" and the bill of lading terms were "binding on the parties"); *Contessa Premium Foods, Inc. v. CST Lines, Inc.*, No. CV 10–7426 (FFMx), 2011 WL 3648388, at *7 (C.D. Cal. Aug. 18, 2011) (finding "that an award for attorneys' fees [was] appropriate" where the plaintiffs' claim for attorneys' fees was "based on language in the" parties' transportation agreement, "rather than a state statute"); *OneBeacon Ins. Co. v. Haas Indus., Inc.*, No. C07-3540 BZ, 2008 WL 4291506, at *1 (N.D. Cal. Sept. 18, 2008) (stating that, while "the relevant section of the Carmack Amendment does not provide for attorney's fees," this "does not prevent the parties from agreeing to a provision awarding attorney's fees in the bill of lading" (citations omitted)); *see also UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1294–95 (11th Cir. 2014) (finding that a claim for attorneys' fees arising out of a contractual agreement between the parties was not preempted by the Carmack Amendment because "attorney's fees do not enlarge or limit the responsibilities of the carrier for loss of property," "[a] carrier that agrees to indemnify an intermediary for attorney's fees faces no more of an obligation than it has expressly chosen to assume," and "[e]nforcement of a self-imposed undertaking poses no risk of patchwork regulation or different demands in different jurisdictions"); *Total Quality Logistics, LLC v. Macktoon, Inc.*, No. 1:12–cv–620, 2014 WL 4426184, at *2 (S.D. Ohio Sept. 9, 2014) (granting an award of attorneys' fees in a Carmack Amendment case where the parties' contractual agreement included the defendant's "express agreement to pay [the plaintiff's] reasonable attorney's fees"). *But see Great W. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 968 (S.D. Ohio 2009) ("There is no case law precedent that a contract other than the bill of lading can be used to award attorney's fees in a Carmack Amendment dispute; therefore, this [c]ourt will not recognize such an expansion."). *See generally Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007) (noting that, "[u]nder the American Rule, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," but "[t]his default rule can, of course, . . . be overcome by an enforceable contract allocating attorney's fees" (citations omitted)).  Pursuant to these cases, the undersigned finds that Plaintiff may seek attorneys' fees from Defendants pursuant to the indemnity provision in the Contract Carrier Agreements.

As to the amount of reasonable attorneys' fees, Plaintiff requests $4,857.50 based on 10.8 hours of attorney Kathleen Jeffries' time "billed at a rate of $375.00 per hour" and 1.7 hours of attorney Timothy Wiseman's "time billed at the rate of $475.00 per hour." (Doc. 13 at 5.) Plaintiff submitted documentation supporting its assertions regarding the amount of time these attorneys spent on this matter between July 8, 2016 and September 7, 2016. (*See* Doc. 15, Exs. E–G.)[2] Additionally, Plaintiff filed declarations from Plaintiff's counsel indicating that they each have decades of specialized experience in the area of transportation law, including active involvement with organizations related to this area. (*See* Doc. 19 at 3–7.) Absent any evidence to the contrary, the undersigned finds that the hours Plaintiff's counsel spent on this matter and the hourly rate requested are reasonable. *See, e.g.*, *Hiken v. Dep't of Def.*, --- F.3d ---, No. 13–17073, 2016 WL 4608147, at *5 (9th Cir. Sept. 6, 2016) ("To determine a 'reasonable hourly rate,' the district court should consider: 'experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented.'" (quoting *Chalmers v. City of L.A.*, 796 F.2d 1205, 1211 (9th Cir. 1986))); *id.* ("The reasonable rate should generally be guided by 'the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" (quoting *Chalmers*, 796 F.2d at 1210–11)). As such, the undersigned recommends that Plaintiff be awarded its requested attorneys' fees in the amount of $4,857.50.

Plaintiff also requests costs in the amount of $609.80, which includes "$400 for the filing of this action and $209.80 for service of the summons and complaint on both [D]efendants." (Doc. 13 at 4.) Plaintiff provided a bill of costs and documentation verifying that it incurred these costs in litigating this action. (*See* Doc. 13, Ex. 2.) The costs associated with filing this action and serving Defendants are properly recoverable by Plaintiff. *See, e.g.*, *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 1:08–cv–00481–AWI–SMS, 2009 WL 565568, at *10 (E.D. Cal.

---

[2] Plaintiff's documentation in support of its request for attorneys' fees indicates that attorney Kathleen Jeffries spent an additional 2.3 hours on this case between September 20, 2016 and September 28, 2016. (*See* Doc. 15, Ex. G.) However, Plaintiff has not requested an additional amount in attorneys' fees beyond the $4,857.50 referenced in its Motion for Default Judgment. (*See* Doc. 13 at 2; *see also* Doc. 19 at 1 (noting that Plaintiff requests "$4,857.50 in attorneys' fees as a component of the judgment").) The undersigned therefore does not recommend awarding an amount in attorneys' fees beyond that requested by Plaintiff in the Motion for Default Judgment.

Mar. 5, 2009) ("Title 28 U.S.C. § 1920(1) provides that clerk's fees are taxable.  Once an item is determined to fall within § 1920, the power to tax such costs is qualified only by the requirement that they be necessarily obtained for use in the case." (citing *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990))); *id.* ("Marshal's fees and fees for service by a person other than the Marshall under [Federal Rule of Civil Procedure] 4 may be recovered; private process servers' fees are properly taxed as costs." (citing *Alflex Corp.*, 914 F.2d at 178)).  The undersigned therefore recommends that Plaintiff be awarded $609.80 in costs.

## VI.    CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's Motion for Default Judgment, (Doc. 13), be GRANTED IN PART as to Count I in the Complaint and judgment be entered in favor of Plaintiff and against Defendants as follows:

1.    Judgment against Defendants in the amount of $59,442.59 plus prejudgment interest;

2.    Attorneys' fees awarded to Plaintiff in the amount of $4,857.50;

3.    Costs awarded to Plaintiff in the amount of $609.80.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   __November 8, 2016__            _____/s/ *Sheila K. Oberto*_____
                                                    UNITED STATES MAGISTRATE JUDGE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28